In the Matter of JOSEPH MM., a Child Alleged to be Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CLIFFORD MM., Appellant. (Proceeding No. 1.) In the Matter of JOSEPH MM., a Child Alleged to be Neglected. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NICOLE MM., Appellant. (Proceeding No. 2.) [937 NYS2d 377]—

Stein, J.

Inasmuch as Family Court's finding of neglect is supported by a sound and substantial basis in the record, we affirm. "[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent . . . to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Matter of Anthony TT. [Philip TT.]*, 80 AD3d 901, 902 [2011], *lv denied* 17 NY3d 704 [2011] [internal quotation marks and citations omitted]). A child's infirmities and special needs must be accounted for when assessing the requisite minimum degree of care in determining whether the child has been neglected (*see Matter of Sayeh R.*, 91 NY2d 306, 315 [1997]; *Matter of Kaleb U. [Heather V.—Ryan U.]*, 77 AD3d 1097, 1099 [2010]).

Here, the evidence before Family Court demonstrated that the mother's mild mental retardation makes it difficult for her to follow through with routine tasks and affects her ability to care for Joseph. Hospital staff noted the mother's impatience with the child and the need to continually refocus, encourage and reassure the mother with regard to tasks involving the child's care. The notes of the hospital staff also indicated that the mother did not comprehend the severity of Joseph's medical issues including, among other things, his difficulty feeding, or the consequences of her disregard for those issues. For example, despite being trained to hold Joseph in an upright position during feeding, the mother was observed standing next to his crib holding a bottle in his mouth with one hand while he was lying flat and while she was talking on the phone, which she was holding with her other hand. During a visit with Joseph at the

home of the child's aunt, the mother dumped the formula out of the child's bottle and denied doing so, stating that the child had consumed the formula. In the course of another such visit, the mother left the child unattended on the couch, further demonstrating her lack of insight into proper infant care and supervision. There was also testimony that the mother neglected her own hygiene, as well as her nutritional health during her pregnancy, and that her self-mutilation and other behavioral disorders—including lack of impulse control manifested in anger management issues—created a risk to herself and others.

As to the father, the evidence established that he suffers from mild to moderate mental retardation, epilepsy, cerebral palsy with hemiparesis and depression, and he has a history of personality disorder. The father's physical disabilities prevent him from assuming the role of the child's primary caretaker without assistance. In addition, the father's anger management issues have resulted in outbursts and numerous incidents of domestic violence involving the mother.

Respondents' home was repeatedly observed to be in a state of squalor. Significantly, there was also testimony that respondents were decreasing their involvement with ARC and service providers—against the advice of ARC personnel—and were increasingly hostile toward attempts to supervise and/or assist them. Although respondents elicited some favorable evidence through documentation and impeachment of petitioner's witnesses, their failure to testify on their own behalf created "the strongest inference against [them] as the opposing evidence would allow" (*Matter of Jared XX.*, 276 AD2d 980, 983 [2000]).

While evidence of respondents' intellectual disabilities, alone, will not support a finding of neglect (*see Matter of Trina Marie H.*, 48 NY2d 742, 743 [1979]), said disabilities may properly form the basis of such a finding when coupled with other factors tending to show imminent danger to the child's well-being (*see Matter of Anthony TT. [Philip TT.]*, 80 AD3d at 902). Here, according proper deference to Family Court's factual and credibility determinations (*see Matter of Kasja YY. [Karin B.]*, 69 AD3d 1258, 1259 [2010], *lv denied* 14 NY3d 711 [2010]), we find a sound and substantial basis in the record to support that court's finding that respondents' cognitive impairment, coupled with their lack of judgment and poor impulse control, domestic abuse issues and self-destructive behaviors, resulted in their failure to exercise a minimum degree of care in providing Joseph with proper supervision or guardianship and that the child's well-being was in imminent danger of becoming impaired.

The parties' remaining contentions have been considered and,

to the extent they are properly before us, are determined to be without merit.

Spain, J.P., Lahtinen, Malone Jr. and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.